BLANK ROME LLP
Sara L. Chenetz (SBN 206936)
chenetz@blankrome.com
Peter Jazayeri (SBN 199626)
jazayeri@blankrome.com
1925 Century Park East, Suite 1900
Los Angeles, CA 90067
Telephone: (424) 239-3400
Facsimile: (424) 239-3434

Attorneys for PHYSICIANS RECIPROCAL INSURERS

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SANTA ROSA DIVISION

In re:

COSENTINO WINERY, LLC,

        Alleged Debtor.

Case No. 10-14006

**Chapter 7 (Involuntary)**

**PHYSICIANS RECIPROCAL INSURER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR RELIEF FROM STAY PURSUANT TO 11 U.S.C. § 362(d)(2)**

**Hearing Date:**
**Date: December 9, 2010[1]**
**Time: 9:00 a.m.**
**Place: Hon. Alan Jaroslovsky**
      **99 South E Street**
      **Santa Rosa, CA 95404**

---

[1] Physicians Reciprocal Insurer is concurrently filing a Motion for Order Shortening Time, pursuant to which it requests that the Court set the Motion for Relief From Stay on November 15, 2010 at 1:30 p.m. or as soon as the Court can hear the matter.

MEMO OF P&A's IN SUPPORT OF MOTION FOR RELIEF FROM STAY

132210.01400/95032544v.1

## TABLE OF CONTENTS

| | | PAGE |
|---|---|---|
| I. | INTRODUCTION | 2 |
| II. | FACTUAL BACKGROUND | 3 |
| | A. PRI's Secured Debt | 3 |
| | B. Subordinated Secured Debt | 4 |
| | C. Debtors' Default and PRI's Forbearance | 5 |
| | D. Other Liens | 6 |
| | E. Appraisal of the Property | 6 |
| III. | LEGAL ARGUMENT | 6 |
| | A. Relief From Stay Must Be Granted Pursuant to Section 362(d)(2) | 7 |
| IV. | CONCLUSION | 9 |

Physicians Reciprocal Insurers ("PRI") hereby files its Memorandum of Points and Authorities In Support of Its Motion for Relief From Stay Pursuant to 11 U.S.C. §§ 362(d)(2) (the "Motion").

## I.  INTRODUCTION

By this Motion and an accompanying motion[2], PRI requests that the Court grant it relief from the automatic stay pursuant to 11 U.S.C. Section 362(d)(2) as to certain real and personal property owned by Cosentino Signature Enterprises Ltd., LLC, a Delaware limited liability company ("Cosentino") and Cosentino Winery, LLC, a Delaware limited liability company ("PropCo", collectively with Cosentino, the "Debtors" and each individually a "Debtor"), when an involuntary petitions under chapter 7 of title 11 of the United States Code ("Bankruptcy Code") was filed on October 18, 2010.

Relief from stay should be granted pursuant to 11 U.S.C. § 362(d)(2) because the Debtors lack equity in their real and personal property and the Debtors have no reasonable prospects of effectively reorganizing. Based on an independent appraisal obtained by PRI, the real property owned by PropCo located at 7415 St. Helena Highway, Yountville, California ("Real Property") has a fair market value of $6,900,000. The personal property ("Personal Property") that is part of PRI collateral has an estimate value of $4,000,000, based on published value for bulk and bottled wine. PRI alone holds a first-priority lien on all of the Debtors' real property and much of Debtors' personal property pursuant to a certain loan agreement and deed of trust, which secure $12,000,000 of debt and are described in more detail herein and in the Declaration of Joseph J. Anania, Jr. ("Anania Declaration") filed herewith. Additionally, there is another $6,000,000 in outstanding liens and other encumbrances on the Real Property that is subordinate to PRI's debt, leaving the Debtor without equity in the Property. Further, substantially all of the Debtors' Personal Property is subject to PRI's liens.

---

[2] The accompanying motion was filed in *In re Cosentino Signature Enterprises, Ltd., LLC* (Case No. 10-14008), an involuntary case that was commenced on the same day as the instant case and is related to this case. To date, there has been no effort to jointly administer these cases.

2

Moreover, the Debtors have no reasonable prospects of reorganization. The Debtors and their co-borrowers have been in default of PRI's loan since February 2009 and PRI agreed to forbear from exercising its rights and remedies until recently. Since then, Debtors and their co-borrowers have attempted to sell their assets or refinance their debt in order to repay PRI. No progress has been made and no reasonably prospects are forthcoming. In August 2010, PRI authorized the trustee under the Deed of Trust on to the Real Property to initiate foreclosure proceedings, which remain pending. Debtors' inability to sell their assets or refinance their debts over the past 18 months, as well as the involuntary petition filed against them, demonstrates that there are no reasonable prospects of reorganization and PRI should be given relief from the automatic stay to exercise its rights and remedies to liquidate the collateral securing its debt, specifically the Real Property and Personal Property that secures PRI's loans.

## II. FACTUAL BACKGROUND

Upon information and belief, Cosentino is the owner and operator of a winery with its principal place of business located at the Real Property. Upon information and belief, PropCo is the owner of the Real Property and conducts no business operations.

### A. <u>PRI's Secured Debt</u>

The Debtors along with Cosentino Signature Wines plc, Vintage Grapevine, Inc., CE2 Winery, LLC, Lockeford Winery, LLC, Crystal Valley Cellars, LLC and Blockhedia Winery, LLC (collectively, with the Debtors, the "Borrowers") are parties to the Amended and Restated Loan Agreement dated October 11, 2006 ("Loan Agreement") with PRI, and the Third Amended and Restated Promissory Note dated May 22, 2008 ("Note") in favor of PRI. <u>See</u> Anania Declaration at Exhibit 1 (Loan Agreement) and Exhibit 2 (Note). The Loan Agreement and Note, together with the other loan documents referred to therein, evidence the Borrowers' obligations to repay $12,000,000 of senior secured loans (collectively, the "Senior Loan") made by PRI to Borrowers. The full pre-petition debt owed to PRI is approximately $12,555,116.55, including pre-petition interest.

The Senior Loan and related obligations are secured by a first priority Deed of Trust, Security Agreement, Assignment of Leases and Rents and Fixture Filing on the Property, properly

recorded on December 6, 2005, and modified by: (i) the Modification and Additional Advance Agreement recorded on October 11, 2006, (ii) the Modification and Additional Advance Agreement recorded on April 10, 2007, and (iii) the Modification and Additional Advance Agreement recorded on August 28, 2007 in the Office of the Recorder of Napa County, California (collectively, the "Deed of Trust"). See Request for Judicial Notice at Exhibits A-D. (Deed of Trust, modifications thereto).

The Senior Loan and related obligations are also secured by substantially all of the personal property of the Borrowers pursuant to the Security Agreement dated December 5, 2005 ("Security Agreement") between Borrowers and PRI, including proceeds of inventory, and the related Uniform Commercial Code ("UCC") financing statements filed with the Secretary of State of the State of Delaware ("UCC Filing Office").[3]

**B.    Subordinated Secured Debt**

The Debtors and the other Borrowers are also indebted to CSW Lender, L.P. and CSW Sub Lender, L.P. for loans in the aggregate outstanding principal amount of $6,000,000 ("Subordinated Loans", collectively with the "Senior Loan", the "Loans"). The Subordinated Loans are secured by the Real Property and certain of the Personal Property. The Subordinated Loans are contractually subordinate to the Senior Loan, and the liens and security interests securing the Subordinated Loans are contractually subordinate to the liens and security interests securing the Senior Loan. The subordination of the Subordinated Loans is evidenced by the Subordination and Intercreditor Agreement dated June 9, 2007, as modified by letter agreements dated March 20, 2007 and August 14, 2007, as well as the Subordination and Intercreditor Agreement dated May 22, 2008.

---

[3] Specifically, Financing Statement No. 53786317 was filed with the UCC Filing Office on December 7, 2005 and was amended by (a) Financing Statement Amendment No. 2007 3300059 filed with the UCC Filing Office on August 29, 2007, (b) Financing Statement Amendment No. 2008 0995728 filed with the UCC Filing Office on March 21, 2008, (c) Financing Statement Amendment No. 2009 1592804 filed with the UCC Filing Office on May 19, 2009, and (d) Financing Statement Amendment (Continuation) No. 2010 2305310 filed with the UCC Filing Office on July 1, 2010. Additionally, Financing Statement No. 2010 0920375 was filed with the UCC Filing Office on March 17, 2010. See Request for Judicial Notice at Exhibit E.

4

## C. Debtors' Default and PRI's Forbearance

The Debtors and the other Borrowers have been in default of the Senior Loan and the Subordinated Loans since February 2009, when they began defaulting on monthly interest payments. On June 29, 2009, the Borrowers, PRI and the Subordinated Lenders entered into a Forbearance Agreement pursuant to which, *inter alia*, PRI and the Subordinated Lenders agreed to forbear from the exercise of rights and remedies under their respective loan documents through September 30, 2009. See Anania Declaration ¶4. The purpose of the forbearance period was to allow the Borrowers to identify a lender or lenders to refinance the Senior Loan and the Subordinated Loan.

The Senior Loan matured on December 31, 2009. The Borrowers, PRI and the Subordinated Lenders entered into a series of amendments to the Forbearance Agreement pursuant to which the forbearance period was extended through March 31, 2010. On March 31, 2010, the forbearance period expired. The Borrowers have met with various third parties since mid-2009 in an effort to refinance the Senior Loan and the Subordinated Loans and to fund a recapitalization or restructuring transaction. See Anania Declaration ¶5. To date, the Borrowers have been unable to refinance the Senior Loan and the Subordinated Loans or consummate a recapitalization or restructuring transaction.

On April 6, 2010, PRI sent a reservation or rights letter to the Debtors and the other Borrowers. See Anania Declaration at ¶6, Exhibit 4. Then, on May 18, 2010, PRI sent a letter to the Debtors and the other Borrowers requesting the Debtors and other Borrowers to make arrangements to pay the Senior Loan and other obligations in full or enter into a deed-in-lieu of foreclosure transaction. See Anania Declaration at ¶7, Exhibit 5. Finally, on July 19, 2010, PRI made demand for payment in full of the Senior Loan and other obligations. See Anania Declaration at ¶8, Exhibit 6. The Borrowers have not made such payment.

On August 5, 2010, at PRI's request, the trustee under the Deed of Trust filed a Notice of Default and Election to Sell Under Deed of Trust as Instrument No. 2010-0017734 in the Official Records of the Office of the Recorder of Napa County, California. See Rights for Judicial Notice

5

Exhibit F. On October 18, 2010 ("Petition Date"), several creditors filed separate involuntary petitions against each Debtor under chapter 7 of the Bankruptcy Code.

**D.  Other Liens**

Upon information and belief, the Debtors have not been timely paying certain vendors and taxing authorities, As a result, certain vendors have asserted "producer's" or "grower's" liens on Cosentino's inventory. The amount owed to these vendors is approximately $1,600,000, which, upon information and belief it was $11,705,000. Additionally, PRI believes that there are additional unpaid past-due withholding taxes and certain tax liens on the Real Property.

**E.  Appraisal of the Property**

In February 2010, PRI obtained an independent appraisal of the Real Property (the "Appraisal") which found its market value to be $6,900,000. A copy of the Appraisal is attached as Exhibit 7 to the Anania Declaration. The Appraisal was conducted by Cushman & Wakefield Western, Inc. ("Cushman"), pursuant to the Uniform Standards of Professional Appraisal Practice. In arriving at the market value, Cushman inspected the Property including the buildings, vineyards and other improvements. The Cushman employee appraisers who conducted the Appraisal are John C. Vaughan and D. Matt Marschall, who are both members of the Appraisal Institute and licensed California Real Estate Appraisers (Nos. AG002680 and AG004164, respectively). Copies of Vaughan's and Marschall's resumes are attached to the Appraisal. As set forth in the Anania Declaration, the Personal Property is nearly all bulk and bottled wine that has a value of approximately $4,000,000 based on published market values. Anania Declaration ¶3.

Based on the February 2010 determination of value of the Real Property at $6,900,000, of the Personal Property at $4,000,000, and the more than $19,000,000 of encumbrances, the Debtors lack equity in both Real Property and Personal Property.

### III.  LEGAL ARGUMENT

As set forth in detail below, relief from stay should be granted to allow PRI to exercise its rights and remedies with respect to its collateral, including, without limitation, continuing foreclosure proceedings against the Real Property. Relief from stay should be granted pursuant to

6

MEMO OF P&A's IN SUPPORT OF MOTION FOR RELIEF FROM STAY
132210.01400/95032544v.1
Case: 10-14006    Doc# 5-1    Filed: 11/08/10    Entered: 11/08/10 18:23:51    Page 7 of 10

Section 362(d)(2) because the Debtors have no equity in the Real Property or Personal Property, neither of which is necessary to an effective reorganization because the Debtors have no reasonable prospects of reorganizing.

### A. Relief From Stay Must Be Granted Pursuant to Section 362(d)(2)

Section 362(d)(2) of the Bankruptcy Code provides that "on request of a party in interest and after notice and hearing, the court shall grant relief from the stay . . . with respect to a stay of an act against property . . . if -- (A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization." 11 U.S.C. § 362(d)(2). The Ninth Circuit holds that the proper definition of "equity" for purposes of Section 362(d)(2)(A) is the difference between the value of the property and all the encumbrances upon it. Stewart v. Gurley, 745 F.2d 1194, 1196 (9th Cir. 1984); Sun Valley Newspapers v. Sun World Corp, 171 B.R. 71, 75 (9th Cir. B.A.P. 1994).

"Once the movant under Section 362(d)(2) establishes that he is an undersecured creditor, it is the burden of the debtor to establish that the collateral at issue is "necessary to an effective reorganization." United Savings Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd., 484 U.S. 365, 375 (1988). Property is necessary for an effective reorganization only if the debtor is able to confirm a plan within a reasonable period of time. Id. See also In re Canal Place Ltd. P'ship, 921 F.2d 569 (5th Cir. 1991) (finding that chapter 11 debtor failed to establish reasonable prospect for successful reorganization and the creditor was entitled to foreclose when implicit objective of proposed plan was to delay foreclosure until debtor could either sell property or wait for return of favorable economic conditions).

The Court in Sun Valley Newspapers set forth the criteria for determining whether a reasonable prospect of reorganization is in sight:

> The burden can be separated into four stages based upon when the creditor requests relief from the automatic stay. In the early stage of the case, the burden of proof is satisfied if the debtor can offer sufficient evidence to indicate that a successful reorganization within a reasonable time is plausible. Near the expiration of the exclusivity period, the debtor must demonstrate that a successful reorganization within a reasonable time is probable. After the expiration of the

7

> exclusivity period, the debtor must offer sufficient evidence to indicate that a successful reorganization within a reasonable time is assured. Regardless of the amount of time a case has been pending, if the evidence indicates that a successful reorganization within a reasonable time is impossible, the court must grant relief from the stay. 171 B.R. at 75 (quotations and citations to other cases omitted).

Here, based on the Appraisal, the Debtors lack equity in the Real Property. The first lien of PRI on the Real Property is $12,000,000 as of the Petition Date. The second lien of the Subordinated Lenders is $6,000,000. There are also outstanding producer's liens on Debtors' inventory and the Property, and tax liens held by various governmental entities in the amount of at least $1,000,000. Given that the Appraisal shows the market value of the Real Property to be $6,900,000, and the value of the Personal Property is approximately $4,000,000, the Debtors lack equity in both the Real Property and Personal Property.

Moreover, the Debtors have no reasonable prospect of reorganization. Since the date of the Forbearance Agreement, the Debtors and the other Borrowers have attempted to refinance Loans and/or sell their assets in order to repay the Loans. During that time, neither PRI nor the Subordinated Lenders have exercised their rights to foreclose on the Real Property and take possession of the Debtors' inventory, but instead permitted the Debtors and other Borrowers to find another way to repay the Loans. Only after approximately 16 months of the Debtors and other Borrowers marketing themselves for sale and attempting to refinance their debts did PRI initiate foreclosure proceedings with regard to the Real Property. The Borrowers' inability to consummate a recapitalization or restructuring transaction during the 16 month forbearance period demonstrates that the Debtors have no reasonable prospect for reorganization.

Further, upon information and belief, the Debtors are not compensating certain vendors and employees charged with maintaining the vineyard and the Debtors' inventory. Since the vines and wine production process require significant and continuous maintenance, prolonged neglect will damage the Debtors remaining assets and decrease the value of its inventory. Granting PRI relief from the automatic stay will permit it to enter the Property and maintain the vineyard and preserve the Debtors' remaining inventory.

Accordingly, the stay should be lifted pursuant to Section 362(d)(2). In addition, PRI requests that the Court order that the foreclosure period commenced by PRI's August 5, 2010 recording of the Notice of

8

Default is not in any way tolled by the filing of this bankruptcy case, such that PRI can timely record a notice of sale without having to reset any prior deadlines.

## IV. CONCLUSION

For the foregoing reasons, PRI respectfully requests that the Court grant the Motion and such other relief as the Court deems just and appropriate.

Date: November 8, 2010

BLANK ROME LLP

By: /s/ Peter F. Jazayeri
Sara L. Chenetz
Peter F. Jazayeri
Attorneys for PHYSICIANS RECIPROCAL INSURERS